# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| ANDREA HARE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) Case No. 4:20-cv-00107-SGC |
| | ) |
| SOCIAL SECURITY | ) |
| ADMINISTRATION, | ) |
| COMMISSIONER | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**[1]

Plaintiff Andrea Hare appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB"). Plaintiff timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review. For the reasons stated below, the Commissioner's decision is due to be affirmed.

### I.   FACTS, FRAMEWORK, AND PROCEDURAL HISTORY

On October 20, 2016, Hare applied for a period of disability and disability insurance benefits under Title XVI of the Social Security Act. (R. 158-59). In her

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 12).

application, Hare alleged disability beginning on December 30, 2013, because of obesity, migraines, degenerative disc disease, bipolar, and anxiety disorders. (R. 49). Hare was forty-three years old at her alleged onset date and forty-eight years old at the time of the decision by the Administrative Law Judge ("ALJ"). (R. 47). She has a twelfth-grade education and past work experience as a wrecker service dispatcher and fast-food employee. (R. 7). Hare alleges she is unable to work due to "chronic moderately severe pain in her neck and back and migraine headaches." (Doc. 14). Hare testified she could not work primarily due to an event at her previous place of employment where she passed out in October 2013 and fell. This fall allegedly caused the rods in her back to "damag[e] the nerves in the spinal columns so [she] is numb from the waist down." (R. 8). Hare testified the result of this fall prevents her from being able to sit for long periods of time. (R. 8).

On February 3, 2017, the Social Security Administration ("SSA") initially denied Hare's claim, after which she requested a hearing before an ALJ. (R. 47). On December 19, 2018, the ALJ held a video hearing with the claimant appearing from Gadsden, Alabama and the ALJ presiding over the hearing in McAlester, Oklahoma. (R. 47). Diana L. Kizer, an impartial vocational expert, also appeared and testified at the hearing. (R. 47). Following the hearing, the ALJ denied Hare's claim. (R. 44). Hare appealed the decision, and it is now ripe for review. *See Frye v. Massanari*,

209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)).

## II.     STATUTORY AND REGULATORY FRAMEWORK

To establish her eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The SSA employs a five-step sequential analysis to determine an individual's eligibility for disability benefits.  20 C.F.R. § 416.920(b).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id*. "Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 863 (11th Cir. 2012).[2] If the claimant is engaged in substantial gainful activity, the Commissioner will determine the claimant is not disabled.  At the first step, the ALJ determined Hare has not engaged in substantial gainful activity since December 30, 2013, her alleged onset date.  (R. 47).

---

[2] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

If a claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment, or combination of impairments, which has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 416.920 (a)(4)(ii) & (c). An impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." *See id.* at § 416.921. Furthermore, it "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." *Id.*; *see also* 42 U.S.C. § 423(d)(3). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 416.922(c).[3] "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20

---

[3] Basic work activities include:

> (1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. § 416.922(b).

C.F.R. § 404.1521(a).  A claimant may be found disabled based on a combination of impairments, even though none of her individual impairments alone is disabling. 20 C.F.R. § 416.920. The claimant bears the burden of providing medical evidence demonstrating an impairment and its severity.  *Id.* at § 416.912(a).  If the claimant does not have a severe impairment or combination of impairments, the Commissioner will determine the claimant is not disabled.  *Id.* at § 416.920(a)(4)(ii) and (c). At the second step, the ALJ determined Hare has the following severe impairments: obesity, migraines, degenerative disc disease, bipolar, and anxiety disorders. (R. 49).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 416.920(a)(4)(iii) & (d). The claimant bears the burden of proving her impairment meets or equals one of the Listings.  *Reynolds-Buckley*, 457 F. App'x at 863.  If the claimant's impairment meets or equals one of the Listings, the Commissioner will determine the claimant is disabled.  20 C.F.R § 416.920(a)(4)(iii) and (d).  At the third step, the ALJ determined Hare did not have an impairment or combination of impairments that meet or medically equal the severity of one of the Listings.  (R. 49).

If the claimant's impairment does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R. § 416.920(e). A claimant's RFC is the most she can do despite her impairment. *See id.* at § 416.945(a). At the fourth step, the Commissioner will compare the assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at § 416.945(a)(4)(iv). "Past relevant work is work that [the claimant] [has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 416.960(b)(1). The claimant bears the burden of proving that her impairment prevents her from performing her past relevant work. *Reynolds-Buckley*, 457 F. App'x at 863. If the claimant is capable of performing her past relevant work, the Commissioner will determine the claimant is not disabled. 20 C.F.R. §§ 416.920(a)(4)(iv) & (f).

Before proceeding to the fourth step, the ALJ determined Hare has the RFC to perform a range of light work. (R. 51). More specifically, the ALJ found Hare had the following limitations with regard to light work, as defined in 20 C.F.R. § 404.1567(b):

> occasionally climbing ramps or stairs, never climbing ladders, ropes or scaffolds, frequently balancing, occasionally stooping, kneeling, crouching or crawling, frequently reaching overhead with the left upper extremity, must avoid concentrated exposure to extreme cold, extreme heat, wetness, and vibration, must avoid even moderate exposure to unprotected heights, unprotected

> moving mechanical parts and dangerous machinery, able to remember and carry out short and simple instructions, occasional interaction with supervisors, co-workers and the general public, can respond appropriately to change in a routine work setting which are gradual, must alternate sitting and standing every 20-30 minutes throughout the workday in order to change position for brief positional change of less than 5 minutes but without leaving the workstation, off task can be accommodated by normal work breaks.

(*Id.*). At the fourth step, the ALJ determined Hare was unable to perform her past relevant work. (R. 53). However, with the aid of testimony from the vocational expert ("VE"), the ALJ found Hare could perform the duties of an officer helper, bench assistant, and electrical assistant. (R. 54). Therefore, the ALJ concluded Hare had not been under a disability from December 30, 2013, through the date of decision. (R. 55).

### III.   STANDARD OF REVIEW

Review of the Commissioner's decision is limited to a determination whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, a district court must "scrutinize the record as a whole

to determine whether the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings.  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV.   DISCUSSION

Hare's argument in favor of remand is based on her claim that the ALJ improperly applied the pain standard. (Doc. 14 at 5-17). Hare asserts the ALJ failed to properly evaluate the credibility of her complaints of pain consistent with the Eleventh Circuit Pain Standard. (*Id.* at 5). Hare contends she experiences "chronic moderately severe pain in her neck and back and migraine headaches" and that the resulting pain makes her unable to work. (*Id.* at 6). In support of these claims, Hare

8

points to Dr. Sandra Carpenter's referral for pain management, as well as her reports of the ineffectiveness of pain management drugs and treatments to Dr. David Cosgrove between November 2016, and May 2018. (R. 625, 626,746,750,754,760-63,783,788).

In addressing a claimant's subjective description of pain and symptoms, the law is clear:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* 20 C.F.R. § 404.1529. If a claimant satisfies the first part of the test, the ALJ must evaluate the intensity, persistence, and effect of the claimant's symptoms or her ability to work. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(c) & (d), 416.929(c) & (d). While evaluating the evidence, the ALJ must consider whether inconsistencies exist within the evidence or between the claimant's statements and the evidence, including her history, medical signs and laboratory findings and statements by medical sources or other sources about how her symptoms affect her. 20 C.F.R. §§ 404.1529(c)(4) & 416.929(c)(4). In determining whether substantial evidence supports an ALJ's

credibility determination, "[t]he question is not . . . whether the ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). The ALJ is not required explicitly to conduct a symptom analysis, but the reasons for his or her findings must be clear enough that they are obvious to a reviewing court. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* (citation omitted).

Here, the ALJ found Hare's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms but her statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (R. 52). As discussed below, the court finds the ALJ's determination is supported by substantial evidence.

At the hearing, Hare testified she was not able to work mainly due to nerve damage in her spine as a result of a fall in 2013, which causes chronic pain in her neck and spine and numbness from the waist down. (R. 8-10). She also claims that if she "uses [her] arms a good bit," it causes stabbing pain and numbness. (R. 12). Hare allegedly cannot sit for long periods of time due to the pain and experiences migraines at least once a week, which medication helps. (R. 8, 11).

Hare reported at her ALJ hearing that she would rate her pain level to be between a six and an eight on a daily basis. (R. 10). However, her treatment record viewed as a whole shows she responded well to pain management. (R. 717, 748-797). She has been prescribed MS Contin and Norco, which were moderately effective at controlling her pain. (R. 750, 754, 760, 783). Hare has also been prescribed Flector patches to help with her back pain. (R. 757). Hare reported that MS Contin was effective for her back pain but not help much with her headaches. (R. 764). Hare has been treated with Fentanyl patches, but she claimed they were not effective. (R. 771). She was prescribed Hysingla for an opioid rotation, but her insurance would not cover it, and she complained of having withdrawals due to not taking opioid medication. (R. 771). On January 23, 2017, Hare received an occipital nerve bock that resulted in a 20% reduction of pain. (R. 777). On April 20, 2018, Hare had a cervical epidural steroid injection and reported it was 75% beneficial for controlling the pain in her neck, shoulders, and arms. (R. 788).

Despite Hare's extensive pain management history, she reports that her pain is unmanageable. (*See* R. 625, 626,746,750,754,760-63,783,788). While Hare states she is unable to work due to pain, she is able to care for her own personal hygiene, get dressed, and cook. (R. 15). Hare, who lives with her husband, states that while she is can drive, cook, and do some household chores, her husband does everything for her. (R. 6-16). She is able to walk about fifty feet before her "legs and feet start

to feel heavy." (R. 14). She also reports feelings of anxiety and depression, for which she is medicated, and that visiting her therapist is helpful. (R. 11). None of Hare's doctors have placed her on any kind of activity restrictions, and she "has a hard time finding doctors" willing to see her because she "just feel[s] like [she is] too much." (R. 13-14).  Hare is able to go to church, volunteered for a church donation drive, and used to attend her son's basketball games before he graduated from Birmingham–Southern College. (R. 16-17). She is able to pay the family bills but, due to her limitations, spends most days watching TV and going on social media and does not cook, clean, or help with any of the household chores. (R. 16, 18).

The ALJ found, however, these extreme limitations are not supported by the medical evidence.  Specifically, the ALJ stated:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. I have considered the entire medical record even when not explicitly discussed.
>
> The claimant has been diagnosed with Degenerative Disc Disease. She has complained of pain symptoms in her neck and back with neuropathy. The claimant has undergone imaging of her Cervical Spine that showed evidence of mild disc narrowing at the C3-C4 section and degenerative changes at the posterior portion of the C3 section. Imaging of the claimant's Lumbar Spine showed evidence of moderate narrowing at the L2-L3 section and the L5-Sl section. She has undergone a C4-C5 fusion in 2016. However, the longitudinal record of evidence indicates that she responded well to

> pain management. Her pain medication is noted within the record as moderately effective in controlling her pain. She had a CESI, which was noted as 75% beneficial to her neck. She has been noted as demonstrating normal strength and intact sensation. She was noted as showing normal muscle strength, normal reflexes, fine movements, and a normal gait.
>
> The claimant has been diagnosed with Migraines. She has complained of headaches. However, a CT of her brain was completely normal.
>
> The claimant has been diagnosed with Depression, Bipolar, and Anxiety Disorders. She has been noted as exhibiting a sad mood and affect. However, she was also noted as exhibiting normal attention and concentration. She was able to count from 20 to 1 in 11 seconds, perform serial threes and sevens, and spell the word "world" backwards. She demonstrated an intact recent and remote memory as well as good insight and judgment.

(R. 52) (internal citations omitted).

Substantial evidence supports these findings by the ALJ. Hare's main reported reason for not being able to work is high pain levels and limb numbness triggered by nerve damage from the 2013 fall. When Hare fell, she did not go to the hospital or seek medical attention for over three weeks. (R. 465). On October 28, 2013, Hare had an appointment with Dr. Carpenter, where she complained of pain and numbness from the fall three weeks earlier and asked for a referral. (R. 465). Dr. Carpenter noted that while the Plaintiff reported numbness she was still able to feel a light touch. (R. 466). Hare saw Dr. Seth Spotnitz on September 29, 2015, and his report noted "[e]valuation of the right sural sensory nerve showed reduced amplitude . . . . All remaining nerves were within normal limits." (R. 560). Dr. Spotniz found no

evidence of electrical instability in her muscles and no electrodiagnostic evidence of focal nerve entrapment or lumbar radiculopathy in either lower limb. (R. 560). On March 16, 2016, Hare saw Dr. James G. White for the first time in twelve years, complaining of numbness and pain in her neck and limbs, although her EMG was normal. (R. 581). Hare also reported a history of neuropathy, but Dr. White noted there was no evidence of neuropathy on the EMG. *Id.* In April 2016, Dr. White ordered a chest scan for Hare, and it came back with "[n]o acute disease" detected. (R. 593). Hare saw Dr. White again on September 14, 2016, and he noted "[o]bviously she has a history of scoliosis and a great deal of instrumentation in the thoracic spine. Again, I can find no deficits and she just has a complaint of neck pain." (R. 575).

On December 28, 2016, Dr. Mina S. Khan examined Hare's back, finding "[n]o tenderness to palpation over the spine. Normal range of motion of the lumbar spine" and a "[n]egative straight leg raise test bilaterally." (R. 658). On July 13, 2017, Hare saw Dr. Royce Jones, who noted "[t]he facet joints appear symmetrical and equal. Osteoarthrosis is non-evident in the lumbar spine. There is evidence of moderate intervertebral disc space narrowing at the L2, L3, L5-S1 segmental levels. The lumbar sagittal curvature is well maintained." (R. 717). On November 8, 2018, Dr. Kennon H. Hagar, examined Hare's thoracic spine scan and reported "[n]o bony

dastructions [sic], compression fractures, paraspinal abnormalities or other significant focal body or soft tissue." (R. 843).

The forgoing shows the ALJ properly applied the pain standard in this case. Substantial evidence supports the ALJ's conclusion that Hare's pain was not as severe as alleged. *See* SSR 16-3p, 2017 WL 5180304, at *8.

## V.   CONCLUSION

Having reviewed the administrative record and considered all of the arguments presented by the parties, the undersigned find the Commissioner's decision is supported by substantial evidence and in accordance with applicable law. Therefore, the court finds that the ALJ's decision is due to be **AFFIRMED**. A separate order will be entered.

**DONE** this 15th day of March, 2021.

*signature*

STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE